### SCHOFIELD MANUFACTURING COMPANY *v.* COCHRAN, receiver.

One desiring to purchase goods which had been pledged as security for a debt was required by the pledgee, as a condition precedent to the release of the goods, to deposit the purchase-price to his account in a named bank, and to "save him harmless in the transaction." Accordingly, the purchaser deposited to the credit of the pledgee, in the bank designated, a draft drawn on a bank in another city for the amount in question. It was known to the officers of the bank first mentioned that the sole purpose of the draft and deposit was to obtain the release of the goods from the custody of the pledgee, but no special instructions were given them in regard to the funds so deposited. The draft was forwarded for collection, and was duly paid ;

but before the money was returned to the bank in which it was deposited, that bank failed and was placed in the hands of a receiver. The purchaser of the goods, in accordance with his agreement, paid the amount of the draft to the pledgee, and brought suit against the depositary bank. *Held*, that the deposit to the account of the pledgee was a general, and not a special deposit, and did not entitle the purchaser, who was subrogated to the rights of the pledgee, to priority over the claims of other general depositors.

Argued November 24, 1903. — Decided March 31, 1904.

Intervention.    Before Judge Reagan.    Pike superior court. May 8, 1903.

*W. W. Lambdin* and *Erwin & Callaway*, for plaintiff.
*Allen & Tisinger*, for defendant.

CANDLER, J.    The Schofield Manufacturing Company, of Macon, desired to purchase some yarns of a manufacturer in Barnesville. The goods, however, were in the possession of the Barnesville agent of the Export Storage Company, of Cincinnati, who held them as security for a loan, and the consent of that company was necessary to the completion of the sale. A representative of the Schofield company, who had gone to Barnesville in the interest of his company, drew a draft on a Macon bank for $306.36, the purchase-price of the yarns, payable to the order of the cashier of the New South Savings Bank, of Barnesville. The Macon bank having notified the bank in Barnesville by telegraph that the draft would be paid when presented, a duplicate deposit-slip was issued to the agent in Barnesville of the Export Storage Company for the amount of the draft. Notwithstanding this deposit, the agent refused to release the goods until express authority to do so was given him by his superiors. The president of the Schofield company then had a communication by telephone with Black, the Atlanta representative of the Export Storage Company, who seems to have had authority in the matter; and Black agreed to release the yarns provided the Schofield company would place the amount of the purchase-price to his credit in the New South Savings Bank, and agree to "save him harmless in the transaction." In accordance with this agreement, the president of the Schofield company directed the president of the New South Savings Bank to transfer the deposit already made to the account of Black, and duplicate deposit-slips were accordingly made out for the amount in question, in the name of C. H. Black, agent. The purpose of

the draft and the deposit seems to have been made known to the president of the Barnesville bank.    The draft was forwarded by the New South Savings Bank to its Atlanta correspondent, which in due course forwarded it to Macon, where it was paid; but before the money was returned to Barnesville the New South Savings Bank was placed in the hands of a receiver.    The Schofield Manufacturing Company paid Black the amount of the draft, and filed an intervention in the suit against the New South Savings Bank, claiming that the deposit was received while the bank was in an insolvent condition and known so to be by its officers; that it was a special deposit in the nature of a bailment, which did not create the relation of debtor and creditor between the parties; and that it was entitled to preference over the creditors of the bank in the payment of the amount of the draft.    By agreement the case was heard by the judge without a jury, and it was " ordered, considered, and adjudged that the intervenor, the Schofield Manufacturing Company, is not entitled to a preference over the other creditors of the New South Savings Bank in any of the funds in the hands of the receiver, and judgment is therefore rendered in favor of the receiver, T. W. Cochran, on the question of priority ; but the intervenor, having paid to C. H. Black, agent, the amount of said deposit, is subrogated to the rights of said Black, agent, which are simply to have a general judgment against the New South Savings Bank for the sum of $306.36." The intervenor excepted, assigning error on the refusal of the court to give its claim priority over the other claims against the bank.

We are clear that the judgment complained of was in exact accord with the law as applied to the facts disclosed by the record. There is nothing in the evidence to show that the deposit made to. Black's account was a special deposit, or even what is sometimes called in banking law a deposit for a specific purpose.    A special deposit is a bailment, and implies a setting apart of the specific money or chattel deposited, to be itself returned on demand.    1 Morse on Banks & Banking (4th ed.), §§ 191, 193.    Plainly there was no such understanding between the parties in the present case.    Nor was the deposit one for a specific purpose, any more than is every general deposit, which is made for the specific purpose of having the bank keep the money safely and return it on demand to the one for whose account the deposit was made.    No

special instructions were given the bank officials as to how, when, or under what circumstances the money deposited was to be paid to Black. From aught that appears, it was to be held subject to his check, and he was at liberty to withdraw it in whole or in part, or to add to it by making other deposits, as he might see fit. The fact that the president of the bank knew that the payment to Black was being made for the sole purpose of releasing the yarns purchased by the plaintiff has no bearing upon the character of the deposit. The reasons which influenced the plaintiff to make the deposit to Black's credit were, in the absence of special instructions on the subject, of not the slightest concern to the bank, and could not alter its relation to Black, or affect the nature of the transaction as a general deposit in the ordinary course of business. Consequently Black became its creditor to the amount of the draft collected, on the same footing with other general depositors of the bank; and the Schofield Manufacturing Company, which, by virtue of its agreement with Black, simply stepped into his shoes, had no right to a preference over the other creditors of the bank. See, on this general subject, *Tiedeman* v. *Imperial Fertilizer Co.*, 109 *Ga.* 661; *Ober* v. *Cochran*, 118 *Ga.* 396. In view of this ruling it is unnecessary to go further and discuss questions argued in the briefs of counsel on the assumption that the deposit was a special one. If it was not a special deposit, it can of course make no difference whether the fund in question was sufficiently traced to permit of the judgment prayed for by the plaintiff. We find no error in the judgment rendered by the court below.

*Judgment affirmed. All the Justices concur, except Simmons, C. J., disqualified.*