WILLIAMS, receiver, *v.* BENNETT, superintendent of banks, *et al.*

1. Under the allegations of the petition the deposit, for which priority is sought, is not a "general" nor, strictly speaking, a "special" deposit. It is a deposit for a designated or specified purpose, and, under par. 5, of sec. 19 of art. 7 of the banking act (Ga. Laws 1919, p. 159), is entitled to priority of payment over "general" deposits which fall under par. 7 of that section and article.

2. The letter of the petitioner, quoted in the opinion, which undertook to authorize a consolidation of the two accounts, did not have the effect of changing the character of the deposit.

3. Both the Merchants Bank and the State superintendent of banks are proper parties to the suit, and the petition is not subject to special demurrer on the ground of misjoinder of parties.

4. The court erred in sustaining the demurrer and in dismissing the petition.

No. 4124.    JUNE 16, 1924.

Equitable petition. Before Judge Franklin. Richmond superior court. November 24, 1923.

*W. K. Miller* and *W. G. McAdoo,* for plaintiff.

*Pierce Brothers,* for defendants.

GILBERT, J. Receivers were appointed ·by Richmond superior court to take charge of the Georgia & Florida Railway Company,

by order dated March 27, 1915. In the course of the receivership receivers' certificates in the amount of $700,000 were issued. The lines of the railway were operated by the U. S. Government during the period of Federal control. Upon return of the property to the receivers they found it necessary to borrow money, and were authorized by order of Richmond superior court, January 25th, 1921, to issue $1,600,000 of receivers' certificates. One half of the amount was to be deposited with the Government to secure a loan of $800,000; the other half to be sold to the public for cash at par. This order provided that $728,000 of the amount loaned by the Government should be used to retire the receivers' certificates then outstanding, with interest, and that the remaining $72,000 should be used for a portion of the revision of the railroad from Augusta to Keysville, and shortly beyond, and for the purchase of heavier rail to be laid along said line of road, representing additions and betterments. The order further provided that, of the amount received from the sale of receivers' certificates to the public, $328,000 should be applied to the revision of the line between Augusta and Keysville and shortly beyond, and the purchase and laying down of heavier rail; $200,000 to "payment pro rata on account of the uncertificated indebtedness of the receivers, incurred prior to January 1, 1921;" $272,000 "to provide a working capital which shall not be available for the payment of any debt or liability incurred or existing prior to January 1, 1921, except by specific order of this court." The matter was concluded by payment, to the holders of the issue of $700,000 of receivers' certificates first referred to, of twenty per cent. of their holdings in cash and delivering to them eighty per cent. thereof in certificates of the new issue. Otherwise the arrangement provided for in the order was carried out. This order further recites, in part: "The receivers have agreed, in an instrument in writing dated the —— day of January 1921, filed with the Interstate Commerce Commission, to the following conditions: '2. The expenditures made from the loan for additions and betterments shall be confined to such expenditures as may be chargeable to. accounts for investments in road and equipment,' etc. '3. The entire loan for additions and betterments shall have been expended or definitely obligated for purposes for which loaned or the entire loan for additions and betterments shall be repaid to the United States on or before January 1,

1922. 4. The receivers, within ninety (90) days after the certification to the Secretary of the Treasury of the aforesaid loan, shall have sold or otherwise disposed of or shall have entered into contracts for the sale or other disposition of eight hundred thousand dollars ($800,000) of receivers' certificates hereto authorized by decree of the superior court of Richmond County, Georgia, dated January 25, 1921, entered of record in the case entitled Baltimore Trust Company (Richmond Trust Company, successor), and within said ninety (90) days shall cause the Merchants Bank in the city of Augusta, Georgia, as the receivers' depository and clearing agent, to certify to the Interstate Commerce Commission that said receivers' certificates have been sold or otherwise disposed of or validly subscribed for as follows: (a) Through the acceptance of an amount of said certificates not exceeding $200,000, by creditors of the receivers, in discharge of claims payable by the receivers prior to January 31, 1921; such claims not being represented by certificates heretofore issued. (b) Through subscriptions by the holders of certificates of the receivers, dated January 31, 1920, and matured January 31, 1921, accompanied by deposit with said Merchants Bank for payment of said matured certificates. (c) Through subscriptions paid in cash, or by negotiable instruments accepted by said Merchants Bank as cash.'"

The facts stated above appear from a petition, as amended, with its exhibits, filed by J. S. Williams, receiver, against Merchants Bank and T. R. Bennett, superintendent of banks, seeking to establish the trust character of a certain balance which stood to the plaintiff's credit on the books of Merchants Bank of Augusta when the same was taken over by the superintendent of banks. The petition also recites "That the money so advanced by the Government, some $792,000, for the uses aforesaid, was by the directions of the said agent, the Merchants Bank, duly collected and received by the Commercial National Bank of Washington, and by it duly remitted to said Merchants Bank, or disbursed in part by it as directed by the said Merchants Bank, all for the said special trust administration of said certificate and improvement purposes of said receivership as authorized by said commission and the court and undertaken by said Merchants Bank. Remittances in case to the Merchants Bank commenced June 18, 1921, and said money—not subject to the check of the Receivers, and for which

no deposit or pass-book or other certificates were ever issued by said Merchants Bank—was specially received for said receivership by said Merchants Bank, and was so used for the certificate-holders and the receivership and managed in part by said bank as trustee and agent as aforesaid, in the furtherance of said loan and improvement project under said act of Congress, until on the 22nd day of July, 1921, there remained a balance of said fund in the possession of said Merchants Bank amounting to $337,749.75, Government money, appearing in what said bank called for its convenience, the 'Certificate Account' of said Receivership." The orders of the court under which Merchants Bank received the funds will presently be set forth. The prayers of the petition were, that petitioner's right to priority in payment be adjudged and declared; and that at such time as it may be necessary to fully protect petitioner in the payment of said moneys under said priority, the superintendent of banks be restrained from paying out any more moneys. The exception is to the dismissal of the petition on demurrer, the grounds of which, so far as necessary, are hereinafter indicated.

1. The demurrer raised several issues, but the controlling question is whether, under the allegations of the petition, the receiver was an ordinary general creditor of the defendant bank, or whether, because of fiduciary relations between the parties, the funds of the petitioner held by the bank constituted a trust fund, embraced within the terms of paragraph 5 of section 19 of article 7 of the banking act of Georgia (Georgia Laws 1919, p. 159), and as such entitled to a priority in payment over debts due to depositors, as contemplated in par. 7 of sec. 19 of art. 7 of that act. The paragraph first cited is as follows: "The order of paying off the debts of an insolvent bank shall be as follows: . . Debts due by the bank as trustee or other fiduciary and other claims of like character." Paragraph 7 is as follows: "Debts due to depositors and other contractual liabilities pro rata." The petition, as amended, sets out court orders defining the rights and duties and the course of dealings between the parties. We deem it necessary to refer only in a general way to the facts alleged. At the time of the original appointment of receivers of the Georgia & Florida Railway, namely, March 27, 1915, the order of appointment contained the following provision: That said receivers "shall deposit all moneys that

may be received by them in any and all of the following banks in
such amount as in their discretion seems proper, namely, Mer-
chants Bank, Augusta, Georgia" (and other named banks). Sub-
sequently, in response to a petition of the receivers, the superior
court passed the following order: "1. That the Merchants Bank,
Augusta, Georgia, is hereby appointed as the financial agent of
the receivers of the Georgia and Florida Railway. As such financial
agent it is fully authorized to execute to the Director-General of
Railroads, or to whatever officer of Federal railroad administra-
tion may be designated, a receipt for all compensation that may
come to be owing to the Georgia and Florida Railway under the
contract of December 29th, 1918, and to collect all corporate income.
Such money shall be cared for by said agent. Shall be used for the
purpose of paying interest charges that may accrue on the Millen
and Southwestern Railroad bonds and on the Georgia and Florida
Terminal Company bonds; taxes that may come to be owing on any
of the corporate property now in the hands of said receivers and
not embraced in the aforesaid contract with the Director-General
of Railroads; a salary of fifty dollars ($50.00) a month agreed to
be paid for the keeping of the receiver's books; and for such other
purposes and to such other persons as may be directed by the order
of this court from time to time. Such agent shall keep a correct
account of all receipts and disbursements, with the proper vouchers
covering the disbursements, and shall be prepared at all times to
make accounting to said receivers and to this court. 2. A. S.
Hatch, Augusta, Georgia, is appointed as the general agent of the
receivers of the Georgia and Florida Railway, and as such is au-
thorized to do and perform such acts as may be requested of him
by said receivers under the authority hitherto delegated to them,
or such acts as may be authorized by the order of this court." A. S.
Hatch, referred to in the above-quoted order, was president of the
Merchants Bank.

It will be observed that under the second order stated above the
bank assumed other duties in addition to the mere routine duties
and responsibilities of a bank of deposit. Also, its president be-
came, at the same time, the "general agent" of the receivers, and
was authorized to do and perform such acts as were requested of
him by the receivers or such acts as were authorized by the order
of the court. The bank was "to collect all corporate income;" it

was to care for such money and to use it for certain specified purposes and for other purposes "as may be directed by order of the court." It was to keep an account of receipts and disbursements and to make an accounting of the same, not only to the receivers, but to the court. It was paid a salary of $50 per month. There were certain outstanding due and unpaid receivers' certificates, and it became necessary for the receivers to obtain funds with which to make these payments. An arrangement was entered into through the Interstate Commerce Commission by which they obtained a loan from the Treasury of the United States in the sum of eight hundred thousand dollars. The negotiations for this loan, in the main, were made through Merchants Bank and its president, A. S. Hatch. The directions for the handling of the funds derived from the government loan were given by the defendant bank and its president, and a portion of such funds were placed in the bank on deposit for specified purposes, such as the payment of outstanding matured receivers' certificates. It is significant that the funds on deposit to the credit of the receiver were not subject to check. When the defendant bank became insolvent and, by operation of law, came under the direction and control of the defendant, T. R. Bennett, superintendent of banks, the Merchants Bank was still indebted to the receiver for certain amounts which it held for the purposes above stated. Under the allegations of the petition the funds sought to be recovered by the petitioner did not constitute a general bank deposit. A general deposit is defined: "A general deposit, which is the ordinary form, is the payment of money into the bank to be repaid on demand, in whole or in part, as called for in any current money. Such a deposit always consists of money which is mingled with other money, the entire amount forming a single fund from which depositors are paid; and where a general deposit is made, the title to the money deposited passes from the depositor to the bank, and the bank becomes the debtor to the depositor in a like amount. Such deposits possess no trust quality, and in case of failure of the bank the depositor has no right to any preference, but shares pro rata with the general creditors. The obligation of the bank is to pay on the demand or check of the depositor, but not to keep and return the specific bills received." 7 C. J. 628, § 305. "A general deposit is a deposit generally to the credit of the depositor, to be drawn upon by him

in the usual course of the banking business; a special deposit is a deposit for safe-keeping, to be returned intact on demand, or for some specific purpose not contemplating a credit on general account.    A deposit in bank is presumed to be general, in the absence of an agreement to the contrary.    This is placed on the ground that such deposit is esteemed the most advantageous to the depositary and most consistent with the general objects, usages, and course of business of banks.    The law prescribes no particular formula for the contract involved in making a special deposit. Like all contracts it grows out of the mutual intention and understanding of the parties.    The purpose and terms of the deposit may be explicitly stated, or the intention of the parties may be inferred from their declarations, considered in connection with their conduct and all of the circumstances.    But if a deposit is made of anything sealed or locked up or otherwise covered or secured in a package, cash-box, bag, or chest or anything of the kind, the law regards it as a pure or special deposit, and the depositary as having the custody thereof only for safe-keeping and the accommodation of the depositor.    The question whether a deposit was general or special most frequently arises where the bank becomes insolvent, and the depositor seeks to follow the fund into the hands of the receiver as a trust fund.    If the deposit was special and can be traced into the hands of the receiver, the depositor may enforce his claim thereto in preference to general depositors.    If, however, the deposit was not special, he is only entitled to share pro rata with the other depositors."    3 R. C. L. 517, § 146.    A special deposit is also defined:    "A special deposit is a delivery of property, securities, or even money to the bank for the purpose of having the same safely kept and the identical thing deposited returned to the depositor.    The acceptance of a special deposit imposes no duty on the banker except to keep the deposited article in safety, and the deposit has no effect whatever on the title to the money or thing deposited, but the title remains in the depositor, who is a bailor, and not a creditor of the bank.    In ordinary cases of special deposits the bank, as bailee, has no right to handle or examine the property deposited, except so far as its safety may require.    Whether a particular deposit is general or special is a matter to be determined by the facts and circumstances attending the making of the deposit, and the rule is that a deposit is not

special unless made so by the depositor or unless made in a particular capacity." 7 C. J. 630, § 306.

"A deposit may be for a specific purpose, as where money or property is delivered to a bank for some particular designated purpose, as a note for collection, money to pay a particular note or draft, etc. While such a deposit is sometimes termed a 'special deposit' and partakes of the nature of a special deposit to the extent that title remains in the depositor and does not pass to the bank, yet it seems more accurate to look on this as a distinct class of deposit. In using deposits made for the purpose of having them applied to a particular purpose, the bank acts as agent of the depositor, and if it should fail to apply it at all, or should misapply it, it can be recovered as a trust deposit; and the agency created by the deposit is revocable by the depositor at any time before the purpose of the deposit has been accomplished. Where money obtained on a mortgage by defendant bank for plaintiffs was deposited specially to pay a debt to the bank, and the balance to be used on repairs on the mortgaged property, the bank was authorized to refuse to honor a check, the purpose of which was to transfer the balance of the deposit to another bank. In an Iowa case it appears that a judgment debtor left the amount of the judgment with a bank with instructions to send it to the clerk of the court in satisfaction of the judgment. The bank, however, arranged with the judgment creditor to transfer the amount to his credit and issued a deposit-slip to him, but upon learning that the judgment creditor's attorney claimed a lien on the amount of the judgment, which the judgment creditor refused to recognize, the bank canceled the credit given to the judgment creditor and transmitted the amount to the clerk of the court, from whom it was received by the attorney, whose authority to appear and act for the judgment creditor had not been withdrawn. Under these circumstances it was held that, while the transaction between the judgment creditor and the bank still remained a mere matter of bookkeeping, the bank had the right to cancel the credit given the judgment creditor, as it was the bank's duty to send the money to the clerk of the court as directed by the judgment debtor, and the judgment creditor was not entitled to the credit given him, but the deposit-slip was a mere receipt which was open to explanation. . . With regard

to the effect of deposits of trust funds the authorities are not in entire accord. According to one view which appears to prevail more generally, deposits made by trustees, executors, administrators, assignees, agents, public officers, and other persons who are serving as fiduciaries are usually considered as simply general deposits, and if the bank fails to pay them, the beneficiaries have no peculiar claims or rights over other creditors, but must share like other creditors; but it has also been held that the receipt by a bank of a trust fund, with the knowledge of its trust character, impressed the assets of the bank, which were increased to that extent, with a trust for the payment of such fund." 7 C. J. 631, 633, §§ 307, 308. *Southern Exchange Bank* v. *Pope,* 152 *Ga.* 163 (108 S. E. 551). This fund was not a "general," nor, strictly, a "special" deposit, but was one held and managed by the Merchants Bank in its capacity as financial agent for designated and specified purposes; and under the facts alleged the relation between the bank and the petitioner was that of an agent to a principal and was of such fiduciary character as is contemplated in the banking act of 1919 (supra), and accordingly is entitled to priority of payment over general deposits which fall under paragraph 7 of the banking act aforesaid.

2. It is insisted by defendants in error, that, even if the relations of the defendant bank with the receivers, in regard to the funds deposited, were originally fiduciary in character, by reason of a letter written to the bank by J. S. Williams, receiver, the character of the deposit was changed to a general deposit. This letter is as follows: "I have advices to the effect that you are carrying on your books two accounts in the name of the receivers of the Georgia and Florida Railway; one account which you designate 'Receiver Certificate Account,' which shows a credit balance of $240,663.95; another account which you designate as the 'regular account,' and which shows as of this date overdrafts aggregating $92,815.77, leaving a net credit balance of $147,848.18. I am in receipt of a letter from Mr. William H. Barrett, our general counsel, dated August 29th, in which he advises that in his opinion it will now be in order to consolidate the two accounts which we have with your bank, and this will be your authority for so doing. Yours very truly, [signed] J. S. Williams, Receiver." This letter was written in response to a suggestion emanating

from the Merchants Bank. Prior to the date of this letter the bank had carried two deposits; one may be called for convenience a "regular" or a general deposit, and the other seemingly treated by both parties as a deposit for a special or designated purpose, called "Receivers' Certificate Deposit." The "general" deposit was largely overdrawn, while there was a credit to the receivers of a large sum under the other deposit. The bank, desirous of securing payment of the overdraft in the "general" deposit, sought and obtained permission of the receiver to consolidate the two accounts, which, if legal, more than repaid the overdraft, and left a substantial sum to the credit of the receivers. It should be observed that necessarily, under the circumstances, the bank knew how it had theretofore carried on its books two accounts of the receivers. It was charged with the knowledge of the fiduciary character of one of the deposits, and the law fixing the bank's responsibility. The bank had been appointed a financial agent of the receivers by the court which appointed the receivers, and had control of all matters relating to the business of the railway company. The railway was being operated by the court, and the receivers and the bank obtained all of their powers from the court, to whom they were accountable. We hold, therefore, that the receiver and the bank were powerless, by any arrangement made between them, to dispense with or disregard the trust or fiduciary relations existing between them. It follows that the letter above mentioned did not in any way change the character of the "Receivers' Certificate Deposit" in the Merchants Bank.

3. The petition is attacked by special demurrer on the ground of misjoinder of parties; that is, that the Merchants Bank of Augusta and T. R. Bennett, superintendent of banks, cannot be sued jointly, under the allegations of the petition. The bank became insolvent, and under the banking law of 1919 its affairs, including its assets, were taken over by the superintendent of banks. The petitioner, as stated above, seeks a decree declaring a priority over other creditors of the bank as to the funds in question, and also seeks to enjoin the superintendent of banks from disposing of the assets of the bank to other creditors until the question of priority can be determined. Under the principles ruled in *Conley* v. *Buck,* 100 *Ga.* 187 (28 S. E. 97), and the numerous decisions of this court following that one, the petition was not subject to

32

special demurrer on the ground of misjoinder of parties. It can serve no useful purpose to quote at length from the very learned opinion of Mr. Justice Fish in that case. Both defendants, under the facts alleged, were proper parties. If, as contended, the bank was not actually a party when the petition was originally filed, it was so made by amendment. The amendment was properly allowed. Defendants in error cite the case of *Berrien County Bank* v. *Alexander,* 154 *Ga.* 775 (115 S. E. 648), to support the contention that the superintendent of banks cannot be sued in this proceeding. That case is not controlling on the question involved in the present case. In the former case it was held that a creditor seeking to establish the validity of a claim against the bank must sue the bank and not the superintendent of banks, on the theory that the superintendent of banks was presumed to perform the duty placed upon him by statute to pay all who had valid and legal claims against the insolvent bank, as far as the assets of the bank permitted. The decision followed the provisions of the banking act, which in terms declares how such a suit must be brought. There was no question in that case of enjoining the superintendent of banks from disposing of the assets in payment of creditors before a preliminary decree establishing a priority could be had. The claim itself was disputed, and until its legality could be established the superintendent of banks would not and should not have recognized it. In this case the indebtedness of the bank to the petitioner in the identical sum demanded is not denied. The difference between the parties arises over the character of the indebtedness. The petitioner claims a priority because of fiduciary or trust relations between the bank and the depositor, and the defendants insist that the deposit was merely general and that the petitioner was an ordinary creditor entitled to no priority over other creditors. We conclude that the suit was properly maintainable against both the superintendent of banks and the Merchants Bank jointly.

*Judgment reversed. All the Justices concur, except Hines, J., dissenting.*