In re John David PALMER, Jr., a/k/a
Johnny Palmer, SSN: 257–73–9425,
Carolyn Dale Bearden Palmer, a/k/a
Dale B. Palmer, SSN: 257–72–8320,
Debtors.

John HANINGTON, Movant,

v.

John David PALMER, Jr. and DOCO
School Employees Federal Credit
Union, Respondents.

Bankruptcy No. 88–10705–ALB.

United States Bankruptcy Court,
M.D. Georgia,
Albany Division.

June 30, 1989.

Walter W. Kelley, Albany, Ga., for John Hanington.

T. Lee Bishop, Jr., Albany, Ga., for John David Palmer, Jr.

William E. Cannon, Albany, Ga., for DOCO School Employees Federal Credit Union.

## MEMORANDUM OPINION

JOHN T. LANEY, III, Bankruptcy Judge.

### STATEMENT OF THE CASE

On April 20, 1989, a hearing was held on John Hanington's (hereinafter "Movant") Motion to Determine Secured Status as to DOCO School Employees Federal Credit Union (hereinafter "DOCO") and Motion to Modify Stay. At the conclusion of the hearing, the court invited the parties to submit briefs on the issue of whether Movant's lien was superior to the lien of DOCO. This court, having considered the evidence presented and briefs of counsel, now publishes its Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

The Debtor is the president and principal shareholder of Mariah Sailboats, Inc. (hereinafter "Mariah"), a Georgia corporation located in Albany, Georgia, whose business is selling sailboats. On May 2, 1986, Mariah and First State Bank and Trust Company of Albany, Georgia (hereinafter "First State Bank") entered into an agreement in which First State Bank agreed to floorplan inventory of Mariah. To secure the indebtedness to First State Bank, the Debtor also gave First State Bank a lien on his house, and it appears that he was personally liable on the debt to First State Bank. A financing statement was executed on May 2, 1986, which included inventory of new and used sailboats, proceeds, and trade-ins.

On May 7, 1986, the Debtor, individually and as president of Mariah, executed a promissory note and security agreement to Movant. The security agreement covered all furniture, fixtures, tools, equipment, and inventory now or hereinafter existing at Mariah. The Debtor also pledged 100 shares of common stock of Mariah, being all the issued and outstanding shares, and the power to vote said shares. A UCC–1 financing statement was filed on May 22, 1986, showing Mariah as Debtor and Movant as a secured party. On April 1, 1987, the original promissory note and security agreement were refinanced and replaced by a new promissory note conveying a security interest in the same inventory collateral. This renewal note was in the principal amount of $45,000.00.

On October 19, 1987, Mariah transferred to the Debtor a 1987 Hunter 26.5 foot boat with motor and executed a bill of sale for $22,575.00. The Debtor financed this purchase for $18,000.00 at DOCO which obtained a promissory note and security agreement from the Debtor. DOCO had checked the UCC financing dockets only under the Debtor's name and apparently was unaware that the Debtor was president of Mariah. DOCO filed a UCC–1 financing statement under the Debtor's name showing the boat and motor as collateral. The $18,000.00 was deposited into Mariah's general corporate bank account.

The Hunter 26.5 foot boat and motor did not appear on the floor plan of First State Bank. No payment was made to Movant for release of his lien on the inventory, although some payments on the Movant's note may have been made after the October 19, 1987, sale date. The downpayment sum of $4,575.00, representing the difference between the purported sale from Mariah to the Debtor and the amount paid by the Debtor to the Movant, was never paid.

On June 20, 1988, there was a substitution of collateral to DOCO by the Debtor. The Hunter boat and motor was sold to another purchaser, and the funds deposited into Mariah's corporate account. Mariah then sold to the Debtor a Capri 22 foot sailboat, motor, and trailer for $9,295.00, and also sold to the Debtor a Hunter 23 foot sailboat, motor, and trailer, for a purchase price of $13,600.00. The combined total purchase price was $22,895.00. The Debtor substituted the above collateral at DOCO for the Hunter boat and motor and gave a DOCO a financing statement. Subsequently on June 24, 1988, DOCO refinanced the loan on which the Capri and Hunter 23 foot boats served as collateral. Mariah paid First State Bank the remaining balance on the Capri which was $1,108.71 and the $2,733.82 on the 23 foot Hunter. First State Bank released the boats. The Debtor received no additional monies from DOCO on June 20, 1988.

Mariah has sold between 50 and 150 boats over the existence of the business since 1986. The normal course of business was to sell the boats for cash with the buyer arranging any necessary financing or to arrange financing for the buyer. Lending institutions would not finance more than 80 percent of the purchase price, and the buyer would have to pay the difference in cash. The Debtor testified that the sales from Mariah to himself were the same as the sales from Mariah to others. However, there are no indications that he ever sold to others without collecting the downpayment. The Debtor knew of the financing statement to the Movant when he went through these transactions, but did not think it was of any significance. The Debtor never asked the Movant for his

permission to transfer the boats to himself, nor did he ask Movant's permission to transfer any boats to third party purchasers. The Debtor as president of Mariah acted as the principal in obtaining loans from First State Bank and from the Movant.

Movant in his Motion to Determine Secured Status asks this court to determine that the lien of DOCO is invalid. This court notes that under Rule 7001(2) of the Bankruptcy Code,[1] proceedings to determine the validity of liens should be brought as Adversary Proceedings. No objections to Movant's procedure having been filed by Respondents, this court will consider that any procedural objections have been waived by Respondents.

## CONCLUSIONS OF LAW

Movant holds a perfected security interest in the inventory, equipment, tools, fixtures, and furniture of Mariah. In the instant case, there is no contention that Movant's financing statement was insufficient. DOCO had no knowledge of any UCC statement or security agreement between Movant and Mariah.

DOCO contends that pursuant to O.C. G.A. § 11–1–201(9),[2] the sale from Mariah to the Debtor was in the ordinary course of business. O.C.G.A. § 11–1–201(9)[3] requires that a buyer in the ordinary course of business: (1) purchase in good faith; (2) purchase without knowledge that the sale to him is in violation of any security agreement; and (3) purchase goods in the ordinary course from a person in the business of selling goods of that kind.

DOCO maintains that each of these elements of O.C.G.A. § 11–1–201(9)[4] have been satisfied. Evidence at the hearing substantiated the first two elements of the above code section, but this court does not find that the third element has been satisfied. The Debtor was not a bona fide purchaser due to the irregularities in sales

from Mariah to the Debtor. These irregularities are based on the facts that Mariah sold the boats to the Debtor at a greater discount than given to other purchasers, and that Mariah sold the boats to the Debtor without collecting any downpayment.

The court in *Merchants & Planters Bank & Trust Co. v. Phoenix Housing Systems, Inc.*, 21 Ark.App. 153, 729 S.W.2d 433, 4 U.C.C.Rep.Serv.2d 1630 (1987), faced a similar issue as in the instant case. In *Phoenix Housing Systems*, the buyer (X) was chief executive officer of a housing manufacturer and in that capacity had obtained a loan from Bank A secured by inventory and accounts receivable. X then took a second personal loan from Bank B giving as collateral a security interest in a prefabricated home which he had contracted to buy from his company. Upon X's default, Bank B claimed its security interest in the house took priority on the grounds that the buyer was a purchaser in the ordinary course of business. The court held that the evidence did not support a finding that X, the chief executive officer, was a buyer in the ordinary course of business when he purchased the model home. Although the fact that X had a special relationship with the seller would not preclude him from being a buyer in the ordinary course, the court found this factor, along with other factors that the sale was not handled in every material way as a sale out of inventory to any retail customer, precluded X from being a buyer in the ordinary course of business. *Id.* at 729 S.W.2d 436, 4 U.C.C.Rep.Serv.2d at 1634.

■ Although the Debtor's special relationship with Mariah does not preclude him from being a buyer in the ordinary course, under the analysis of *Phoenix Housing Systems, supra*, the Debtor is precluded from being a buyer in the ordinary course in the instant case. The fact that the sale from Mariah to the Debtor was conducted

---

1. R.Bankr.P. 7001(2).

2. O.C.G.A. § 11–1–201(9) (Supp.1988)

3. See supra note 2.

4. See supra note 2.

without a downpayment and the fact that the sum of $4,575.00 [5] was never paid to Mariah coupled with the special relationship of the Debtor to Mariah precludes the Debtor from being a buyer in the ordinary course.

Since the Debtor does not qualify as a buyer in the ordinary course of business, DOCO's argument that pursuant to O.C. G.A. § 11–9–307(1) [6] it took free of the Movant's lien fails. DOCO cites to the court the case of *Rome Bank & Trust Co. v. Bradshaw*, 143 Ga.App. 152, 237 S.E.2d 612 (1977) as authority for its position that DOCO took free of Movant's lien. DOCO's reliance on *Bradshaw* is misplaced if the Debtor does not qualify as a buyer in the ordinary course. In *Bradshaw*, the defendant operated a sole proprietorship and was in the business of buying and selling used automobiles. The plaintiff and defendant operated under a floorplan arrangement where the plaintiff provided financing for defendant. The defendant sold several used cars to other purchasers who paid defendant for the cars, but never received the certificates of title for the cars. The Georgia Court of Appeals held that the buyers of used cars in the ordinary course of business took free of the plaintiff's lien on inventory of the dealer even if the buyers knew of the existence of a lien. In *Bradshaw*, the buyers of the used cars satisfied the elements of O.C.G.A. § 11–1–201(9) [7] and therefore, became buyers in the ordinary course. This is not the situation in the instant case, as the Debtor is precluded from claiming the status of a buyer in the ordinary course.

DOCO next maintains that it is a bona fide purchaser for value under O.C. G.A. § 11–2–403(1).[8] DOCO is not a bona fide purchaser because they were dealing with the Debtor, individually, who was not in the business of selling boats. The only title they can obtain is what title he had, and his interest is subordinate to that of the Movant because of the irregularities in the sale transactions. *See Commercial Credit Equipment Corp. v. Bates*, 159 Ga. App. 910, 285 S.E.2d 560 (1981).

Likewise DOCO's reliance on *Matter of Smith*, 51 B.R. 904 (Bankr.M.D.Ga.1985) fails because DOCO was dealing with the Debtor individually. Although *Smith* found that the definition of purchaser includes one who takes by sale, mortgage, lien or any other voluntary transaction creating a security interest, this fact alone does not qualify DOCO as a bona fide purchaser for value. O.C.G.A. § 11–2–403(1) provides "A purchaser of goods acquires all title which his transferor had or had power to transfer...." *O.C. G.A. § 11–2–403(1) (1982)*. Consequently DOCO acquired only the title which its transferor (the Debtor) had which was subject to Movant's lien.

Accordingly, this court finds Movant's lien to be superior to the lien of DOCO. There was no specific proof as to the value of the collateral at the time of the hearing, but it is clear that the value of the collateral at no time exceeded the debt of the

---

5. As previously stated, this sum of $4,575.00 represents the difference between the purported sale from Mariah to the Debtor and the amount paid by the Debtor to Mariah.

6. O.C.G.A. § 11–9–307(1) (1982).
   (1) A buyer in the ordinary course of business (subsection (9) of Code Section 11–1–201) other than a person buying farm products from a person engaged in farming operations takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence.

7. O.C.G.A. § 11–1–201(9) (Supp.1988).

8. O.C.G.A. § 11–2–403(1) (1982).
   (1) A purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with voidable title has power to transfer a good title to a good faith purchaser for value....

Debtor to Movant. This court grants Movant's Motion to Lift the Stay pursuant to § 362(d)(2) of the Bankruptcy Code.[9] This is a Chapter 7 liquidation and there has been no offer of adequate protection, nor does the Debtor have equity in the property.

---

9. 11 U.S.C.A. § 362(d)(2) (Supp.1989).