PARIS CONSTRUCTION COMPANY,
Plaintiff,

v.

RESEARCH–COTTRELL, INC.,
Defendant.

Civ. A. No. 76–415.

United States District Court,
W. D. Pennsylvania.

June 13, 1978.

Baskin, Boreman, Wilner, Sachs, Gondelman & Craig, Joel Perskey, Pittsburgh, Pa., for plaintiff.

Thorp, Reed & Armstrong, J. Frank McKenna, III, Pittsburgh, Pa., for defendant.

OPINION

WEBER, Chief Judge.

Paris Construction Company (Paris), plaintiff in the above action was a second tier subcontractor in a contract with Nick Istock, Inc. (Istock). Istock in turn was a subcontractor to Research-Cottrell which was the prime contractor for construction of a facility for Jones and Laughlin Steel Company in Aliquippa, Pennsylvania.

Paris has not been paid for the work performed on the job and has sued Research-Cottrell for these items.

Research-Cottrell has moved for summary judgment on the claims of Paris and has filed evidentiary matters in support thereof. Paris' Response to the motion relies to a very great extent on the same evidentiary materials, largely excerpts from depositions.

Plaintiff's Amended Complaint alleges that its claim against Research is based on the following facts: (1) plaintiff's bid as a subcontractor became part of Istock's bid which was accepted by the general contractor; (2) pursuant to the direction of Research-Cottrell and Istock, plaintiff entered into performance of its work; (3) at the specific request of agents and/or employees of Research-Cottrell, plaintiff agreed to do additional work; and, (4) the additional work or "overages" performed by plaintiff were authorized by plaintiff's invoices which were initialed by the on-site supervisor of Research-Cottrell who acted in the capacity of agent of Research-Cottrell.

Defendant's contention, supported by evidentiary materials presented, and not refuted by any evidence produced by plaintiff is that there was no contractual relationship between Research and Paris; that the subcontract between Research-Cottrell and Istock prohibited any subcontracting by Istock; and, that any relationship between Istock and Paris was an arrangement of their own.

Research-Cottrell's position is further fortified by the testimony that all extra work authorizations for the work claimed by Par-

is in this suit were on Istock forms (prepared by Paris) rather than on Paris forms, as alleged in the Amended Complaint. The Paris forms were used with respect to matters outside the Istock contract.

■ Fundamental to this lawsuit is the fact that Paris has filed an identical suit in the Common Pleas Court of Beaver County, Pennsylvania, against Nick Istock, Inc., for the same work and the same damages as those sought from Research-Cottrell. The sworn Complaint in that case alleges that Paris' contract on this job was with Nick Istock, Inc.

We conclude that there is not a genuine issue of material fact and that the plaintiff here, Paris Construction Company, had no express contract with the defendant Research-Cottrell.

Plaintiff also claims that it is entitled to recover from Research-Cottrell on a quantum meruit and/or implied contract theory in that it performed extra work at the request of the supervisor for Research-Cottrell. The primary inquiry in determining this matter is whether or not any circumstances exist which would reasonably have led Paris to believe that Research-Cottrell rather than Istock would pay for Paris' performance.

■ The evidence produced shows that all extra work performed by Paris on written orders signed by Research-Cottrell's onsite supervisor, Mulholland, were processed through Istock and that Paris billed Istock for such extra work, as well as for regular progress payment and payroll accounts.

There is no countervailing evidence to create an issue of fact here. Research-Cottrell had a contract with Istock which provided for the mechanism of payment for extra work ordered. The fact that Research-Cottrell ordered such work performed and signed authorizations for it is not inconsistent with the conclusion that Research-Cottrell was dealing at all times with the Nick Istock, Inc., contract and Istock personnel. The mere fact that the person to whom the request was made was an employee of Paris does not affect the result. Mulholland was dealing with Istock on the job. Research-Cottrell had no contractual relation at any time with Paris.

■ Count IV of the Amended Complaint asserts a claim based on detrimental reliance on the representations made to Paris by Research-Cottrell.

The elements of detrimental reliance are: (1) a promise to a promisee (2) which the promisor should reasonably expect to induce action by the promisee (3) which does induce such action by the promisee, and (4) which should be enforced to prevent injustice to the promisee. See Section 90, Restatement on Contracts; *Fried v. Fisher*, 328 Pa. 497, 196 A. 39 (1938); *Sunseri v. Sunseri*, 358 Pa. 1, 55 A.2d 370 (1947).

■ Unlike a claim in quasi-contract or implied contract, detrimental reliance does not establish a relationship giving rise to legal liability in absence of express contract. The doctrine of detrimental reliance is "not so much one of contract, with a substitute for consideration, as an application of the general principles of estoppel to certain situations." *Fried v. Fisher*, supra, 328 Pa. 501, 196 A. 41. Before detrimental reliance can be successfully alleged, a promise inducing action or forbearance by the promisee in reasonable reliance thereon must form the basis of the claim.

■ Again we find no evidence here creating an issue of fact. No promise or arrangement between Research-Cottrell and Paris existed upon which Paris could reasonably rely to induce it to perform. Any promises made with respect to work performed at the Aliquippa project were between Paris and Istock. Therefore, with respect to plaintiff's claim based on detrimental reliance we must grant summary judgment in favor of defendant.