**C & K PETROLEUM PRODUCTS, INC., Appellant,**

v.

**EQUIBANK.**

No. 87–3520.

United States Court of Appeals, Third Circuit.

Argued Dec. 15, 1987.

Decided Feb. 18, 1988.

---

John R. Friedlander, Pittsburgh, Pa., for appellant.

Manning J. O'Connor, II, Kincaid & McGrath, P.C., Pittsburgh, Pa., for appellee.

Before SLOVITER and COWEN, Circuit Judges and DEBEVOISE[*], District Judge.

## OPINION OF THE COURT

COWEN, Circuit Judge.

This appeal arises from an order of the district court dismissing C & K Petroleum Product's ("C & K") complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. C & K's amended complaint alleged fraud, detrimental reliance, and breach of a duty of good faith against the defendant, Equibank, related to certain checks issued by one of Equibank's customers, Ropet, Inc. ("Ropet"), to C & K during a two week period in December, 1984. In its appeal to this Court, C & K also argues that Equibank failed to dishonor checks written by Ropet to C & K in the manner required by the Pennsylvania Uniform Commercial Code ("UCC"), 13 Pa.Cons.Stat.Ann. §§ 1101 *et seq.* (Purdon 1984).

Because factual allegations in a complaint must be presumed to be true when considering a motion to dismiss, we will reverse the district court's dismissal of C & K's fraud claim concerning an alleged intentional misrepresentation by Equibank, and remand for proceedings consistent with this opinion. We also hold that C & K does not have standing under the UCC to assert a claim for wrongful dishonor against Equibank. Finally, we will affirm the dismissal of C & K's claims based on detrimental reliance and breach of a duty of good faith under the UCC.

### I.

Appellant C & K Petroleum Products, Inc., an Ohio corporation, is a supplier of

---

[*] The Honorable Dickinson R. Debevoise, United States District Judge for the District of New Jersey, sitting by designation.

petroleum products. C & K supplied petroleum products and acted as a trade creditor to Ropet, Inc., a wholesaler and retailer of petroleum products. Appellee, Equibank, is a Pennsylvania bank where Ropet maintained a checking account. Ropet is not a party to this action. No contractual relationship exists between C & K and Equibank.

Ropet maintained a checking account with Equibank for the purpose of paying its trade creditors, such as C & K, for products delivered. C & K alleges that prior to December, 1984, Equibank routinely honored checks written by Ropet to trade creditors when funds necessary to pay these checks were deposited, but not yet collected. On or about December 4, 1984, apparently in response to the deteriorating financial condition of Ropet, Equibank allegedly changed its policy and refused to honor checks written by Ropet to C & K or other payees on deposited but uncollected funds. C & K alleges that Equibank failed to notify Ropet or any of Ropet's other trade creditors of this change of the bank's policy. Instead, Equibank returned the checks with the explanation that "funds were uncollected." For two weeks, C & K continued to supply over $10,000 worth of products to Ropet in exchange for checks that continued to be dishonored on the ground that funds were uncollected.

During this two week period, Ropet steadily made deposits to its checking account, in part based on sales of products that continued to be supplied by its trade creditors. However, Equibank allegedly used these funds to "setoff" existing debts owed the bank by Ropet, rather than to

honor checks written by Ropet to its trade creditors, such as C & K. On December 18, 1984, Ropet filed for reorganization under Chapter 11 of the Bankruptcy Code. Pursuant to insolvency law, Equibank, as a secured creditor of Ropet, benefited substantially from the fact that unsecured creditors like C & K continued to supply products to Ropet during this two week period. In contrast, C & K and other unsecured trade creditors of Ropet suffered substantial losses with less hope of recourse in a bankruptcy proceeding.

C & K alleges that Equibank's actions were part of an intentional scheme to defraud C & K and Ropet's other trade creditors in a calculated attempt to minimize Equibank's own losses. C & K alleges that on or about December 4, 1984, Equibank decided to close Ropet's checking account, but failed to notify Ropet that its account was closed and lied about its reasons for dishonoring Ropet's checks. By allegedly concealing its decision to close Ropet's account and misrepresenting that checks were dishonored because of uncollected funds, Equibank allegedly deceived C & K into continuing to transfer assets to Ropet, thereby increasing the value of Equibank's security interest.

Following an initial exchange of pleadings,[1] C & K filed an amended complaint in the district court alleging fraud, detrimental reliance, and breach of a duty of good faith. Equibank filed a motion to dismiss the amended complaint pursuant to Rule 12(b)(6) on May 14, 1987. C & K's amended complaint was dismissed by the district court on July 16, 1987, by memorandum opinion and order.[2]

1. C & K filed its original complaint on December 11, 1986. Equibank responded with a motion to dismiss on January 26, 1987. C & K filed a brief in opposition to Equibank's motion to dismiss on February 26, 1987, in which they sought leave to file an amended complaint. The district court granted C & K leave to amend their complaint by order dated April 8, 1987.

2. In dismissing C & K's complaint, the court below relied exclusively on the decision of a federal bankruptcy court in *Georgia Casualty & Surety Co. v. Tennille Banking Co. (In re Smith)* 51 B.R. 904 (Bankr.M.D.Ga.1985) ("*Smith*"). We find *Smith* distinguishable. The court in

*Smith* was not ruling on a motion to dismiss, but rendered its decision after reviewing evidence that had been stipulated into the record by the parties. 51 B.R. at 907. In addition, C & K alleges that Equibank's return of the checks with the explanation that funds were uncollected was an intentional misrepresentation designed to deceive and harm Ropet's trade creditors. However, no similar positive misrepresentations were alleged to have been made in *Smith*. While agreeing with the district court's reliance on *Smith* in support of the proposition that a bank has no duty to disclose the financial status of its depositers to third parties dealing

## II.

This Court's review of the district court's order is plenary since appellate consideration of a district court order dismissing a complaint pursuant to Rule 12(b)(6) solely involves a question of law. *D.P. Enterprises, Inc. v. Bucks County Community College,* 725 F.2d 943, 944 (3d Cir.1984).

### A.

■ In its appeal to this Court, C & K argues that Equibank failed to dishonor checks written by Ropet to C & K in the manner required by the UCC. We hold that C & K does not have standing to assert a claim under the UCC for wrongful dishonor against Equibank based on checks written by Ropet, a third party. Under the UCC "[a] payor bank is liable to its *customer* for damages proximately caused by the wrongful dishonor of an item." 13 Pa. Cons.Stat.Ann. § 4402 (Purdon 1984) (emphasis added). In this case, Ropet is the only entity with standing to bring an action against Equibank for wrongful dishonor of its checks.

C & K's assertion that a customer's right to bring such an action "runs to the holder of the check" (Appellant's Brief at 24) is not supported by the language of section 4402 of the UCC, or decisions of the Pennsylvania courts. *See American Bank & Trust Co. of Pa. v. Commonwealth Nat'l Bank,* 73 D & C 2d 463, 465 (1976). Instead, the UCC grants the holders of checks which have been dishonored by a payor bank immediate recourse only against the "drawers and indorsers" of the checks. 13 Pa.Cons.Stat.Ann. § 3507(b) (Purdon 1984). In this case, C & K was limited under the UCC to bringing an action against Ropet, or any indorsers of the checks, by reason of Equibank's dishonor of the Ropet checks.

### B.

■ The next issue is whether the facts and allegations contained in C & K's com-

plaint are sufficient to support a claim of fraud against Equibank. The elements necessary to prove fraud under Pennsylvania law are: (1) a misrepresentation, or a fraudulent utterance or non-disclosure, (2) an intention by the maker that the recipient will thereby be induced to act, (3) justifiable reliance by the recipient upon the misrepresentation, and (4) damage to the recipient as a proximate result. *See Thomas v. Seaman,* 451 Pa. 347, 350, 304 A.2d 134, 137 (1973); *Marian Bank v. International Harvester Credit Corp.,* 550 F.Supp. 456, 461 (E.D.Pa.1982), *aff'd,* 725 F.2d 668 (3d Cir.1983). In deciding a Rule 12(b)(6) motion, factual allegations in the complaint are presumed to be true, and reasonable inferences drawn from those facts must be made in favor of the complainant. *D.P. Enterprises,* 725 F.2d at 944.

In its complaint, C & K alleges that Equibank intentionally misrepresented the status of Ropet's account when it returned checks with the explanation of uncollected funds. C & K argues that this intentional misrepresentation concealed the fact that Equibank had actually closed Ropet's account on or about December 4, 1984, and decided to no longer honor significant checks written on the account. In addition, C & K avers that it justifiably relied on this alleged misrepresentation when it continued to supply petroleum products to Ropet during the next two weeks, and suffered damages as a result.

Presuming the facts asserted by C & K to be true, this Court finds that the above allegations in C & K's complaint are sufficient to support a claim of fraud against Equibank. We will reverse that part of the district court's order dismissing C & K's fraud claim, and remand to consider the narrow question of whether Equibank intentionally misrepresented the status of Ropet's account in an attempt to defraud C & K. On remand, the district court should consider the following specific issues: (1) whether Equibank closed Ropet's account on or about December 4, 1984; (2) whether

---

with its depositers, absent inquiry by those third parties, we believe that the district court's exclusive reliance on *Smith* to support a motion to

dismiss in this case was incorrect. *See* Section II. C., E. *infra.*

Equibank misrepresented the status of Ropet's account by returning checks with the explanation of uncollected funds; (3) whether Equibank's alleged misrepresentation was intended to induce trade creditors, such as C & K, to continue to transfer products to Ropet; (4) whether C & K justifiably relied on the alleged misrepresentation that the checking account was still viable when it continued to transfer products to Ropet in exchange for worthless checks; and (5) whether C & K suffered damages as a result, and the measure of those damages.

### C.

■ C & K also argues that Equibank's failure to notify Ropet and C & K of an alleged change of policy—i.e. a decision to no longer honor checks on deposited but not yet collected funds—constituted fraudulent nondisclosure. We agree with the district court's holding that, absent inquiry, Equibank had no duty to inform C & K or Ropet's other trade creditors of the status of Ropet's account, policies related to the account, or the financial condition of Ropet. *Smith,* 51 B.R. 904. Therefore, we will affirm that part of the district court's dismissal of C & K's fraud claim based on an alleged fraudulent nondisclosure.

### D.

■ C & K also alleges a claim based on detrimental reliance. The elements of a claim based on detrimental reliance are: (1) a promise to a promisee, (2) which the promisor should reasonably expect will induce action by the promisee, (3) which does induce such action, and (4) which should be enforced to prevent injustice to the promisee. *See Restatement (Second) of Contracts,* § 90 (1981); *Central Storage &*

*Transfer Co. v. Kaplan,* 487 Pa. 485, 489, 410 A.2d 292, 294 (1979) (doctrine of promissory estoppel embodied in section 90 of the Restatement (Second) of Contracts is the law of Pennsylvania); *Paris Construction Co. v. Research–Cottrell, Inc.,* 451 F.Supp. 938 (W.D.Pa.1978). Generally, promissory estoppel is designed to prevent the injustice that results when a promisee is reasonably induced by, and relies upon, some promise by a promisor that is broken.

In bringing its claim based on detrimental reliance, C & K alleges that it continued to supply petroleum products to Ropet in reliance on "Equibank's implied promise to administer the main checking account of Ropet in the normal, banking fashion ... [a] bank's promise is that it is not intentionally scheming to encourage the issuance of checks it, the bank, knows will never be honored." Appellant's Brief at 17–18. Promissory estoppel would be rendered meaningless if this Court were to allow C & K to maintain an action for detrimental reliance based on the alleged existence of such a broad and vague implied promise. *See Paris,* 451 F.Supp at 940 (detrimental reliance does not give rise to a claim based on an implied contract). Since there is no express promise by Equibank that could justifiably be relied upon, we will affirm the district court's dismissal of C & K's claim based on detrimental reliance.

### E.

■ Finally, C & K argues that Equibank's actions violated an alleged duty of good faith under the UCC. The Pennsylvania UCC states that "[e]very contract or duty within [the code] imposes an obligation of good faith in its performance or enforcement."[3] 13 Pa.Cons.Stat.Ann.

---

**3.** C & K also cites sections 4103(a) and 4103(e) of the Pennsylvania UCC in support of its argument that it may recover damages for Equibank's alleged violation of a duty of good faith. These provisions are irrelevant. Section 4103(a) states that no agreement entered into between a bank and its customers that varies the requirements of the UCC concerning bank deposits and collections "can disclaim the responsibility of a bank for its own lack of good faith...." 13 Pa.Cons.Stat.Ann. § 4103(a).

Section 4103(e) then sets forth a rule for determining the measure of damages which, under section 4103(a), cannot be limited by agreement. Where there is bad faith, a party to an agreement which varies the requirements of the UCC may recover additional damages suffered as a "proximate consequence" of the bad faith. No such agreement exists between C & K and Equibank. C & K's argument that these provisions authorize the broad recovery of damages by any party "who can establish that damages

§ 1203 (Purdon 1984). C & K has failed to allege the existence of a "contract or duty" between Equibank and C & K that would allow recovery for breach of a duty of good faith. No contractual relationship exists between C & K and Equibank. As discussed *supra*, absent inquiry, Equibank had no duty to inform C & K concerning the status of Ropet's account, policies related to the account, or provide information related to the financial status of Ropet. *Smith*, 51 B.R. 904.

C & K argues that "[t]o refuse to recognize the payor bank's duty of good faith to a holder of its customer's checks will undermine and destroy our commercial system." Appellant's Brief at 22. We disagree. Exposing a bank to potential liability for breach of a duty of good faith to everyone with whom a bank's customer deals with by check, when a bank has no knowledge of the individuals or entities involved nor control over its customers' activities, is beyond the intended reach of the UCC duty of good faith. Therefore, we will affirm the district court's dismissal of C & K's claims based on an alleged violation of a duty of good faith.

### III.

In summary, we hold that C & K lacks standing under the UCC to assert a claim for wrongful dishonor against Equibank. We will reverse the district court's dismissal of C & K's fraud claim related to Equibank's alleged intentional misrepresentation of the status of Ropet's account, and remand for further proceedings consistent with this opinion. We will affirm the district court's dismissal of C & K's claims based on an alleged fraudulent nondisclosure, detrimental reliance, and breach of a duty of good faith. Each party to bear its own costs.

are proximately caused by [an] act of bad faith,"

is without merit. Appellant's Brief at 21.