NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3470
_____

DERRICK J. JOHNSON; F & J HOLDINGS, INC.; CHARLES THOMPSON,
                                                                    Appellants

PITTSBURGH BAKER'S DOZEN, INC.; EDWARD GANDY
(Intervenors in District Court)

v.

DUNKIN' DONUTS FRANCHISING, L.L.C.,
a/k/a Dunkin' Brands, Inc., a/k/a Dunkin' Donuts
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-11-cv-01117)
District Judge: Honorable Nora B. Fischer
_____

Submitted Under Third Circuit LAR 34.1(a)
May 1, 2015

Before: FISHER, HARDIMAN and ROTH, *Circuit Judges*.

(Filed: July 21, 2015)
_____

OPINION*
_____

_____

    * This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does
not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

This appeal is taken from the District Court's summary judgment in favor of Dunkin' Donuts. We will affirm, essentially for the reasons stated by the District Court.

I

The facts of this case are explained in the District Court's thorough opinion. In brief, Dunkin' Donuts began discussions in 2006 with Pittsburgh Baker's Dozen, Inc. (PBD) and its consultant, Charles Thompson, to build a Pittsburgh-area bakery to supply fresh baked goods to potential Dunkin' franchisees. When concerns arose about PBD's ability to house and fund the bakery, Derrick Johnson, another PBD consultant, helped form F&J Holdings, Inc. to take PBD's place in the negotiations. The bakery project moved forward with Thompson, Johnson, and F&J (collectively, Plaintiffs) taking a more active role.

In August 2007, however, Dunkin' told Thompson that it had developed a new frozen donut technology that would render the Pittsburgh bakery project kaput. Plaintiffs sued Dunkin' for damages in the District Court, alleging, among other things, promissory estoppel. The Court granted summary judgment for Dunkin', and all Plaintiffs except PBD appealed.[1]

---

[1] The District Court had diversity jurisdiction under 28 U.S.C. § 1332, and we have jurisdiction under 28 U.S.C. § 1291.

## II

We exercise plenary review over the District Court's summary judgment and apply the same standard it did. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014). In doing so, we review the record in the light most favorable to the nonmovant, *id.*, affirming summary judgment if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law, Fed. R. Civ. P. 56(a).

## III

Plaintiffs proffer two arguments in this appeal. Their principal claim is that the District Court erred in determining that no reasonable jury could find that they reasonably relied on Dunkin's promises and inducements. To bring a promissory estoppel claim under Pennsylvania law, a plaintiff must show that "1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee; 2) the promisee actually took action or refrained from taking action in reliance on the promise; and 3) injustice can be avoided only by enforcing the promise." *Luther v. Kia Motors Am., Inc.*, 676 F. Supp. 2d 408, 421 (W.D. Pa. 2009) (citing *Crouse v. Cyclops Indus.*, 745 A.2d 606, 610 (Pa. 2000)). For the first prong, "the promisor must have an objectively reasonable belief that a purported promise will induce action by the promisee." *Burton Imaging Grp. v. Toys "R" Us, Inc.*, 502 F. Supp. 2d 434, 439 (E.D. Pa. 2007) (citing *C & K Petroleum Prods., Inc. v. Equibank*, 839 F.2d 188, 192 (3d Cir. 1988)). This prong is not satisfied if the promisee acts based on a mistaken judgment,

because such reliance isn't reasonable. *Id.* (citing *Murphy v. Bradley*, 537 A.2d 917, 919 (Pa. Commw. Ct. 1988)).

The District Court rightly concluded that no reasonable jury could find that Plaintiffs reasonably relied on Dunkin's purported promises. In early 2007, Dunkin' and PBD entered an Approved Bakery Manufacturer Agreement designating PBD as an approved supplier. That Agreement contained a number of explicit disclaimers. It stated, among other things, that PBD was "granted no exclusive territory or service area under this Agreement," App. 317, and that Dunkin' "made no commitment on its own behalf or on behalf of its franchisees to purchase, distribute, or to cause to be purchased or distributed any minimum amount of Products," App. 317. Given these express disclaimers, any reliance Plaintiffs might have had was based entirely on mistaken judgment or misplaced hope, not on Dunkin's representations. *See Burton Imaging*, 502 F. Supp. 2d at 439 ("[B]usinesses may not rely merely on their own interpretation of the legal significance of a promise.").[2]

Plaintiffs also argue that there remains a question of material fact regarding whether they were still PBD's agents after May 12, 2007, when Thompson renounced his agency by telling Dunkin' that PBD could no longer participate in the bakery project. The point is well taken, but it is immaterial to our disposition of the case. Even if Plaintiffs

---

[2] In fact, Thompson himself didn't seem to rely upon any kind of promise. He testified that he was suspicious "right at the beginning," App. 170, and spotted ample evidence that Dunkin' had no intention of building a bakery in Pittsburgh, App. 152.

became principals, their reliance on the Agreement would still be mistaken, for the reasons explained above.

For the reasons stated, we will affirm.