**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 19-3847 & 19-3892
_____

DANSKO HOLDINGS, INC.,

      Appellant in No. 19-3892

v.

BENEFIT TRUST CO.,

      Appellant in No. 19-3847
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:16-cv-00324)
District Judge: Hon. Jan E. DuBois
_____

Argued: November 16, 2020

Before: AMBRO, BIBAS, and ROTH, *Circuit Judges*

(Filed: March 16, 2021)
_____

Richard N. Bien                    [ARGUED]
J. Bradley Leitch
Lathrop GPM
2345 Grand Boulevard, Suite 2200
Kansas City, MO 64108

Joshua Bachrach
Wilson Elser Moskowitz Edelman & Dicker LLP
2001 Market Street,
Two Commerce Square, Suite 3100
Philadelphia, PA 19103

    *Counsel for Appellant in No. 19-3847*


Robert W. Hayes                    [ARGUED]
Cozen O'Connor
1650 Market Street, Suite 2800
Philadelphia, PA 19103

    *Counsel for Appellee in No. 19-3847*

————————————

OPINION OF THE COURT

————————————

BIBAS, *Circuit Judge.*

A shoe company hired a trust company as trustee for its employees' stock ownership plan. After that, the trustee hinted that it would help the shoemaker refinance its debt, but then backed out of that deal. The shoemaker sued the trustee. The trustee counterclaimed for the cost of defending the suit. On

summary judgment, the District Court rejected both parties' claims.

We will vacate and remand. The court erred in rejecting the shoe company's contract, estoppel, and fraud claims. But under the trust agreement, the shoe company must advance the trustee's reasonable litigation expenses.

## I. BACKGROUND

### A. Dansko and Benefit's falling out

Dansko Holdings, a maker of shoes, offers its employees a stock ownership plan. In 2011, it hired Reliance Trust Company as the plan's trustee. Dansko and Reliance signed a trust agreement.

In 2014, Dansko considered replacing Reliance with Benefit Trust Company. During its due diligence, it asked Benefit whether it had recently been investigated by the Department of Labor. Benefit had been, but falsely denied it.

Dansko hired Benefit. In June 2014, Dansko's board passed a resolution "appoint[ing]" Benefit as the new trustee. App. 396–97. The resolution added that Benefit would be "substituted for Reliance Trust Company in the Trust Agreement." App. 396. About two weeks later, Benefit "accepted its appointment." App. 399.

Around that time, Dansko decided to refinance its debt. It needed a trustee's help with that and raised the issue a few times with Benefit over the next six months. Benefit never agreed in writing to do this work. But it allegedly said it would

3

"be *able* to do the [deal]" and estimated that it would need a month or more to do due diligence for the trust. App. 2 (emphasis added). So Dansko thought Benefit would be the trustee for the deal.

But Benefit backed out. In December 2014, it told Dansko that it would not serve as trustee for the debt deal. That caught Dansko off guard and delayed the deal. The delay allegedly cost Dansko more than $2 million in extra interest.

### B. District court proceedings

Dansko sued Benefit, making three claims relevant here: First, Benefit breached the trust agreement, which required it to help with the deal. Second, when Benefit hinted that it would help with the deal, it made an implied promise that is now enforceable by promissory estoppel. And third, Benefit fraudulently induced Dansko to hire it by falsely denying the Department of Labor's investigation. Benefit counterclaimed for its defense costs under an indemnification clause in the trust agreement.

After discovery, the District Court granted summary judgment. It rejected Dansko's claims but held that Dansko did not have to indemnify Benefit for its defense costs. *Dansko Holdings, Inc. v. Benefit Trust Co.*, 418 F. Supp. 3d 100, 105–12 (E.D. Pa. 2019).

Both sides now appeal. As the parties agree, Pennsylvania law governs this case. Sitting in diversity, we must predict how the Supreme Court of Pennsylvania would resolve each issue.

4

## II. Dansko's Contract Claim Survives

First, Dansko claims that Benefit must help with the debt deal under the trust agreement. The District Court thought that Dansko had waived this claim in its summary-judgment brief. But we read its brief as preserving that claim. Alternatively, Benefit asks us to hold the claim barred by federal and Pennsylvania law. But those arguments fail too.

### A. Dansko did not waive its contract claim

Throughout this case, Dansko has pressed its contract claim. It first raised this claim in its complaint, alleging that Benefit both "breached the express terms of the Trust Agreement" and "breached the implied duty of good faith and fair dealing." App. 46–47. Dansko repeated the second contract theory in its summary-judgment brief, narrowing its position by pressing "only … its claim for breach of the duty of good faith and fair dealing." Supp. App. 47. It claimed that although the contract did not expressly address Benefit's obligation to help with a refinancing, that duty came within the contract's broad purpose.

The District Court thought that by pressing "only" the good-faith theory, "Dansko withdrew its breach of contract claim." 418 F. Supp. 3d at 106. We disagree. Dansko's good-faith theory was not an *alternative* to the contract claim, but a version of the claim. Under Pennsylvania law, a good-faith claim is a type of contract claim. *Burton v. Teleflex Inc.*, 707 F.3d 417, 432 (3d Cir. 2013). By relying "only" on a good-faith theory for its contract claim, Dansko abandoned its first theory

5

that Benefit had breached the agreement's express terms. It did not abandon the contract claim entirely.

### B. Dansko's claim is not barred by federal or Pennsylvania law

Benefit says that even if Dansko did not waive the contract claim, we can affirm its rejection under ERISA or Pennsylvania trust law. We disagree.

1. *Federal law*. Benefit argues that ERISA preempts this suit. Employee Retirement Income Security Act of 1974, 29 U.S.C. ch. 18 (ERISA). We disagree. ERISA does preempt some state-law claims, but only those that are "challenge[s] to the actual administration of [an employee benefit] plan." *Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 85 (3d Cir. 2012). It does not preempt "run-of-the-mill state law claims" that just happen to "affect[] and involv[e] ERISA plans and their trustees." *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 833 (1988).

Dansko's contract claim happens to involve an ERISA plan. But its claim is "quite remote from the areas with which ERISA is expressly concerned—reporting, disclosure, fiduciary responsibility, and the like." *Iola*, 700 F.3d at 85 (internal quotation marks omitted). It is thus not preempted.

2. *Pennsylvania law*. Benefit adds that Dansko cannot sue for breach of trust. In Pennsylvania, a breach of trust is "[a] violation by a trustee of a duty the trustee owes to a *beneficiary*." 20 Pa. C.S.A. §7781(a) (emphasis added). Dansko is not a beneficiary of the trust; only its employees are. But Dansko did *not* sue for breach of trust. It sued Benefit not on

behalf of its employees, but for itself. So Benefit's argument is off base.

Finally, Benefit says that it never breached the contract. But because the District Court thought Dansko had waived the contract claim, it never addressed this issue. We will let the District Court consider Benefit's remaining arguments about the duty of good faith and fair dealing on remand.

### III. DANSKO'S ESTOPPEL CLAIM SURVIVES

Next, Dansko claims promissory estoppel. It alleges that along with whatever promises Benefit made in the trust agreement, it also promised to serve as trustee for the debt deal. Even though Benefit never put the promise in a formal contract, Dansko says, it is enforceable by estoppel.

The District Court thought that the estoppel claim was barred because Dansko and Benefit *did* have a formal contract: the trust agreement. We disagree. True, a party cannot bring an estoppel claim when a contract claim could cover the same ground. But here, the estoppel claim is about a promise that Benefit made years *after* it signed the agreement. Thus, though Dansko cannot recover on both its contract and promissory estoppel claims because they allege the same injury, it can still bring both claims for now.

Benefit asks us to affirm on two other grounds, arguing that estoppel cannot enforce implied or oral promises. Both these arguments are mistaken too.

## A. The estoppel claim is not barred by the trust agreement

A party may not use estoppel to enforce a contractual promise. After all, estoppel is only a contract "substitute" for when "the formal requirements of contract formation have not been satisfied." *Carlson v. Arnot-Ogden Mem'l Hosp.*, 918 F.2d 411, 416 (3d Cir. 1990) (internal quotation marks omitted). But Dansko is not trying to use estoppel to enforce the words of the trust agreement. Instead, it relies on statements Benefit allegedly made *after* signing the agreement. *Compare* App. 46 (Complaint) (pleading that Benefit agreed to serve as trustee on June 18, 2014), *with id.* at 48 (alleging estoppel based on statements made over the next six months). So the estoppel claim is proper.

## B. The estoppel claim need not rely on an express promise

In the alternative, Benefit argues that it never *expressly* promised to help with the deal. In Pennsylvania, it argues, estoppel applies only to express promises.

Though the Supreme Court of Pennsylvania has never addressed this issue, we doubt it would agree. First, "Pennsylvania has adopted the *Restatement* view of promissory estoppel." *Edwards v. Wyatt*, 335 F.3d 261, 277 (3d Cir. 2003); *see Kreutzer v. Monterey Cty. Herald Co.*, 747 A.2d 358, 361 (Pa. 2000). And one of the Restatement's examples of estoppel involves an "implied promise." Restatement (Second) of Contracts § 90 illus. 3. Plus, in dicta, many lower Pennsylvania courts have said that "[m]isleading words, conduct, or silence" can amount

to a "promise" that will support promissory estoppel. *Penn-Aire Aviation, Inc. v. Adapt Appalachia, LLC*, No. 565 WDA 2016, 2017 WL 3169280, at \*5 (Pa. Super. Ct. July 26, 2017) (citing *Novelty Knitting Mills, Inc. v. Siskind*, 457 A.2d 502, 503 (Pa. 1983)); *accord Lehigh Valley Hosp. v. Cty. of Montgomery*, 768 A.2d 1197, 1200 (Pa. Commw. Ct. 2001); *Thomas v. E.B. Jermyn Lodge No. 2*, 693 A.2d 974, 977 (Pa. Super. Ct. 1997).

What is more, at oral argument Benefit's lawyer admitted that he could not point to any Pennsylvania estoppel case that required a promise to be express. So we see no evidence that Pennsylvania courts limit estoppel to express promises.

True, Benefit does cite one of our cases, but it overreads that case. *C & K Petroleum Prods., Inc. v. Equibank*, 839 F.2d 188 (3d Cir. 1988). In *C & K*, we upheld dismissal of an estoppel claim because "there [was] no express promise by [the defendant] that could justifiably be relied upon." *Id.* at 192. Benefit reads *C & K* as *requiring* an express promise. But the case is not so broad. There, we upheld the dismissal because it rested on "such a broad and vague implied promise." *Id.* In other words, *that* promise was too indefinite. We did not hold that an implied promise could *never* be narrow and specific enough. We think that one could be. On remand, the District Court may consider if the promise *here* was concrete enough to support an estoppel claim.

## C. The estoppel claim need not rely on a written promise

Finally, Benefit argues that if it had helped with the deal, it would have eventually needed to commit in writing. So it argues that Dansko's reliance on an oral promise was unreasonable.

We disagree. The whole point of promissory estoppel is to enforce a promise even when "the formal requirements of contract formation have not been satisfied." *Carlson*, 918 F.2d at 416. Thus, failure to follow contract formalities does not by itself defeat an estoppel claim.

In sum, Dansko's estoppel claim is not barred by the trust agreement or by resting on an implied oral promise. The District Court erred in holding otherwise.

## IV. DANSKO'S FRAUD CLAIM SURVIVES

Dansko's last claim is that Benefit fraudulently induced Dansko to hire it as a trustee. When Dansko was vetting Benefit, Benefit falsely denied that the Department of Labor had investigated it. Dansko says that lie tricked it into hiring Benefit.

The District Court rejected the fraud claim based on the trust agreement's integration clause. We disagree. By signing an integration clause, a party concedes that it has not *yet* been falsely induced to sign the contract. But here, Benefit made false statements years *after* Dansko signed the integration clause. So the clause does not cover Benefit's statements and does not bar the fraud claim.

Alternatively, Benefit argues, the gist-of-the-action doctrine bars the fraud claim because it is just a repackaging of the contract claim. Again, we disagree. The trust agreement is silent on Benefit's background. Any duty to be honest about the investigation came from tort law, not the contract.

### A. Dansko's fraud claim is not barred by the integration clause

The trust agreement has an integration clause. It says: "[T]here are no other agreements or understandings between the parties relating to the subject matter hereof … ." App. 99. Normally, an integration clause bars a party's later claim that he was fraudulently induced to sign the contract. *Yocca v. Pittsburg Steelers Sports, Inc.*, 854 A.2d 425, 436–37, 437 n.26 (Pa. 2004). A plaintiff can hardly claim to have relied on a lie about the contract if he denied having any side understandings.

But that logic does not apply here. The substance of the trust agreement, including the integration clause, was negotiated by Dansko and Benefit's predecessor in 2011. When the original parties signed the integration clause, they were asserting that they had "no other agreements or understandings" *as of 2011*. Three years later, Dansko and Benefit agreed to substitute Benefit in as the new trustee. But they did not touch the rest of the agreement. They never updated the integration clause to say they had no side agreements *as of 2014*.

Nor did the clause update automatically. Under Pennsylvania law, a contract's integration clause "does not serve as an integration clause for [a] subsequently signed … [a]mendment." *Giant Food Stores, LLC v. THF Silver Spring Dev.,*

11

*L.P.*, 959 A.2d 438, 447 n.4 (Pa. Super. Ct. 2008). If the parties want to disclaim any outside understandings about an amendment, they must say so when they sign the amendment. Dansko and Benefit did not say so as of 2014. So the integration clause applies as of 2011, not to the false statements in 2014.

In its brief, Benefit characterized the 2014 change not as an amendment, but as a new contract with the same terms (a novation). But at oral argument, Benefit retreated from this position, conceding that we could view the substitution as an amendment. It does not matter. Either way, the parties never renegotiated the terms or updated the integration clause. They never stipulated that they had no side understandings about the 2014 substitution.

### B. The fraud claim is not a contract claim

In the alternative, Benefit asks us to reject Dansko's claim as just a repackaging of its contract claim. We disagree. A fraud claim is really a contract claim (and must thus be dismissed) if the "duty [allegedly] breached is one created by the parties by the terms of their contract." *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68 (Pa. 2014). In other words, a plaintiff cannot say that a defendant defrauded him just by reneging on a contractual promise. By contrast, when "the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts," it is a true fraud claim. *Id.*

Dansko's claim is a true fraud claim. Benefit's statement had nothing to do with the contents of the trust agreement. It lied about a side issue: Benefit's suitability to become trustee.

12

By making that statement, Benefit violated not the contract, but (if anything) a social duty not to lie to business partners.

Benefit asks us to affirm on other grounds. It says that Dansko never relied on the false statement, that any reliance was unreasonable, and that the statement did not harm Dansko. We will leave all of these issues for the District Court to address on remand.

## V. DANSKO MUST ADVANCE BENEFIT'S LEGAL FEES

Benefit counterclaims for the costs of defending this lawsuit, based on the trust agreement's indemnification clause. In response, Dansko argues that Benefit is not a party to the agreement and that this case does not trigger the clause. We disagree with Dansko. A premise of its own suit is that Benefit *is* a party to the agreement. And the agreement unambiguously requires Dansko to indemnify and reimburse Benefit for the costs of defending this suit.

### A. Benefit is a party to the trust agreement

Dansko errs in arguing that Benefit never signed the agreement. In June 2014, Dansko "appoint[ed] Benefit Trust Company to replace Reliance Trust Company as the successor trustee of the Trust" and "RESOLVED … that Benefit Trust Company be substituted for Reliance Trust Company in the Trust Agreement." App. 396–97. Just over two weeks later, Benefit "accepted its appointment as the Trustee." App. 399. By doing that, Benefit signed onto the trust agreement.

Dansko's argument is not only wrong, but also estopped. Dansko sued Benefit for breaching the trust agreement. That

13

claim presupposes that Benefit agreed to the trust agreement. By bringing its contract claim, Dansko has conceded that the trust agreement binds the party. It is estopped from taking an inconsistent position.

### B. Under the trust agreement, Dansko must advance Benefit's legal fees

The indemnification clause is broad but clear: Dansko must advance Benefit's legal fees. The clause says that "[Dansko] agrees to indemnify [Benefit] and its directors, employees and officers … [for] any and all expenses reasonably incurred in … defending … any … litigation … to which [it] may become subject … relating to [Benefit's] duties as Trustee." App. 100 (§ 9.9). Dansko must pay these expenses "as and when [Benefit] incurs them." App. 101 (§ 9.10).

But the parties carved out from the scope of the indemnity a "Non-Indemnity Loss," which includes any "claim, damage, expense, liability or loss … from the bad faith, gross negligence, willful misconduct or material breach of the terms of [the trust agreement] by [Benefit]." App. 100–01 (§ 9.9). If Benefit receives any advancement for what is ultimately determined to be a Non-Indemnity Loss, it probably would have to return that money to Dansko. App. 101–12 (§ 9.10).

1. *The word* "*indemnify*" *includes first-party indemnity*. In resisting this conclusion, Dansko focuses on the word "indemnify." It argues that to "indemnify" means to reimburse for losses caused by a *third party*, not by Dansko. We disagree. "The plain, unambiguous meaning of 'indemnify' is not 'to compensate for losses caused by third parties,' but merely 'to

compensate.'" *Atari Corp. v. Ernst & Whinney*, 981 F.2d 1025, 1032 (9th Cir. 1992) (quoting *Black's Law Dictionary* 769 (6th ed. 1990)); *see, e.g.*, *Indemnify*, *Black's Law Dictionary* (11th ed. 2019) ("To reimburse (another) for a loss suffered because of a third party *or one's own* act or default" (emphasis added)); *see also Indemnify* (def. 2a), *Oxford English Dictionary* (2d ed. 1989) (drawing no distinction between first-party and third-party indemnification). Dansko cites no authority for its narrower definition.

Further, the parties contemplated exceptions to the indemnity when they carved out "Non-Indemnity Loss" from the indemnity and reimbursement provisions. But that carve-out does not extend to all first-party claims. So we will not read in that exception when the parties negotiated none.

2. *The indemnification clause does not contradict another part of the contract*. The District Court thought that another part of the contract would make no sense if the clause applied to first-party claims. The contract says that if Benefit is sued, Dansko can assume Benefit's defense. The court thought "[i]t would be absurd to give Dansko the right to assume [Benefit's] defense against [Dansko]." 418 F. Supp. 3d at 111. It would be. But the contract does not say that. Though the contract generally lets Dansko assume Benefit's defense, it carves out an exception for when Dansko and Benefit have a conflict of interest.

3. *The indemnification clause will not limit Benefit's negligence liability.* Lastly, Dansko says that the contract cannot cover first-party claims because if it did, that "would limit [Dansko's] rights of action." Dansko Br. 29. Here, Benefit

15

seeks only litigation costs. But Dansko points out that the indemnification clause covers not only litigation costs, but also "damages … liabilities and losses." App. 100 (§ 9.9). If Dansko had to indemnify Benefit against its own negligence suits against Benefit, that would effectively release Benefit from negligence liability to Dansko.

We doubt this would happen. In Pennsylvania, a prospective release for negligence is "unenforceable" unless it does so "with the greatest particularity." *Topp Copy Prods., Inc. v. Singletary*, 626 A.2d 98, 99 (Pa. 1993). The trust agreement's words are general and do not mention Dansko's own suits. So the agreement is not an enforceable release, and our reading does not limit Dansko's substantive rights to sue for negligence.

At root, Dansko objects that a first-party indemnity would be surprising. But the words to which the parties agreed require that. "When a writing is clear and unequivocal, its meaning must be determined by its contents alone." *Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 429 (Pa. 2001) (quoting *Robert F. Felte, Inc. v. White*, 302 A.2d 347, 351 (Pa. 1973)). And while we "must strictly construe the scope of an indemnity contract against the party seeking indemnification," this contract is unambiguous. *Jacobs Constructors, Inc. v. NPS Energy Servs., Inc.*, 264 F.3d 365, 371 (3d Cir. 2001). We will hold Dansko to the terms it agreed to.

* * * * *

The District Court erred in granting summary judgment against Dansko's contract, estoppel, and fraud claims as well as Benefit's indemnity claim for reasonable litigation costs. We will thus vacate and remand for further proceedings.